COHEN, LEDER MONTALBANO
& CONNAUGHTON, L.L.C.
669 River Drive, Suite 125
Elmwood Park, New Jersey 07407
(908) 298-8800
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| BOARD OF TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 945 PENSION FUND, | **Civil Action** |
| Plaintiff, | **Docket No.** |
| vs. | **COMPLAINT** |
| CROWN CARTING, INC. and CHRIS BOEL in his personal capacity as Principal of CROWN CARTING, INC., | |
| Defendants. | |

Plaintiff, the Board of Trustees of the International Brotherhood of Teamsters, Local 945 Pension Fund (hereinafter the "Pension Fund") by way of Complaint against the Defendant, Crown Carting, Inc. ("Crown Carting") and Chris Boel in his personal capacity as Principal of Crown Carting ("Chris Boel"), together hereinafter referred to as Defendants, hereby states:

### STATEMENT OF THE CASE

1. This action is commenced to recover the withdrawal liability calculated in accordance with 29 U.S.C. §1381 incurred by Crown Carting when on or about September 2010 it ceased having an obligation to contribute to the Pension Fund or permanently ceased all covered operations under

1

the Plan, resulting in Crown Carting no longer being a contributing employer to the Pension Fund.

2. Defendant CROWN CARTING is liable for the withdrawal liability owed to the Pension Fund pursuant to the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA") 29 U.S.C. §1001 et *seq.*, specifically 29 U.S.C. §§ 1381(a), 1451(a) and1451(c). Defendant Chris Boel in his personal capacity as principal of Crown Carting is personally liable for payment for the payment of the amount of withdrawal liability, as company monies to meet such obligation are an asset of the Fund, and Defendant Chris Boel's failure to turn over such fund asset to the Pension Fund is a breach of fiduciary duty.

## JURISDICTION

3. This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1331, as Plaintiff's claims arise under ERISA, [29 U.S.C. §1132(a)(1), 29 U.S.C. § 1332(a)(3), 29 U.S.C. §1132(e)(1) and 29 U.S.C. § 1451(c). This Court has subject matter jurisdiction over all ERISA claims, in accordance with 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over the Defendant pursuant to ERISA, 29 U.S.C. § 1132(e)(2), as the Defendant has established the minimum contacts with the State of New Jersey, and does business in the State of New Jersey.

## VENUE

5. Venue is properly laid pursuant to 28 U.S.C. §§ 1391(a)(2) and (b)(2), and pursuant to 29 U.S.C. §§1132(e)(2) and 1451(d) since Defendant conducted business in this judicial district and a substantial portion of the conduct and events underlying Plaintiff's claims occurred within the territorial jurisdiction of this Court. Venue is also properly laid as this is the district where the PENSION FUND is administered.

6. In accordance with 29 U.S.C. §1451(g), Plaintiff will serve the Pension Benefits Guarantee

Corporation (hereinafter "PBGC") with a copy of this complaint.

**The Plaintiff**

7. Plaintiff, the Board of Trustees of the International Brotherhood of Teamsters (IBT), Local 945 Pension Fund ("Pension Fund"), is comprised of Trustees who are fiduciaries as defined by ERISA, 29 U.S.C. §§1002(14)(A) and 1102.

8. The Pension Fund is a multi-employer employee benefit plan as defined in ERISA and administered pursuant to ERISA, 29 U.S.C. Section 1001, *et. seq.* The principal place of business of the Pension Fund is 585 Hamburg Turnpike, Wayne, NJ 07470. The Pension Fund is maintained pursuant to a Separate Amended Agreement and Declaration of Trust.

9. Pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(b), the Board of Trustees of the Pension Fund is authorized to bring an action on behalf of the Plan, its participants and beneficiaries to recover unpaid and delinquent contributions and assets of the Pension Fund. In accordance with 29 U.S.C. §1401(d), the failure of Crown Carting to make timely payments to the Pension Fund constitutes a failure to make a contribution required under the Pension Plan within the meaning of 29 U.S.C. §1145.

10. Non-party to this action, Local Union 945, IBT and its successor, Local Union 125, IBT and Crown Carting were parties to a collective bargaining agreement which created obligation to participate and contribute to the Pension FUnd on its employees' behalf.

11. Non-party to this action, Local Union 945, IBT was succeeded by non-party Local Union 125, IBT, who was the sole and exclusive bargaining representative for a group of employees formerly employed by Crown Carting.

**The Defendants**

12. Crown Carting is organized and registered as a domestic business corporation incorporated

3

in the State of New Jersey. At all times relevant to this action, Crown Carting maintained its place of business at 530 Church Street, Suite 8, Ridgefield, NJ 07657.

13. Upon information and belief, the Defendant has not filed for protection under the U.S. Bankruptcy Code.

14. Crown Carting is New Jersey corporation which at all times relevant to this proceeding was licensed to do business within the State of New Jersey, employed Local 945 bargaining unit employees, and thus made and/or was obligated to make contributions to the Pension Fund on behalf of its employees.

15. Defendant Chris Boel is a principal of Crown Carting and has possession and full discretion over the disposition of the money in the Company's accounts, which monies once obligated and owed to the Pension Fund are assets of the Pension Fund.

## FACTUAL BACKGROUND

16. At all times relevant to this action, Crown Carting has been an "Employer" within the meaning of ERISA, 29 U.S.C. 1002(5). Non-party to this action, Local Union 945, International Brotherhood of Teamsters was signatory to a collective bargaining agreement with Crown Carting.

17. On or about September 2010, Crown Carting withdrew from the Pension Fund and subsequently, the Pension Fund issued a Notice of Withdrawal on or about August 30, 2010, which required Crown Carting to make quarterly installment payments in the amount of $3,522.50 to the Pension Fund commencing October 30, 2010.

18. Crown Carting failed to make the first, second, and third quarterly installment payments in a timely fashion.

19. On or about December 2, 2010, as a result of Crown Carting's failure to make its first installment payment, counsel for the Pension Fund sent a second letter advising that further failure

to make payment would result in default and acceleration of all withdrawal amounts due.

20. In or about March 3, 2011, Crown Carting paid its first installment payment.

21. Crown Carting failed to include the required late payment charge of $184.85 with its untimely first installment payment.

22. On or about February 9, 2011, the Pension Fund issued a Notice of Default to Crown Carting advising that their failure to make payment pursuant unless all delinquent payments were made within sixty (60) days of receipt of the letter, the entire amount of withdrawal liability shall be accelerated and be made immediately due and payable. To date, Crown Carting has not made any payments on the withdrawal liability amounts and default has occurred.

23. In or about August 26, 2011, after multiple letters from counsel, Crown Carting, remitted the second and third installment payments to the Pension Fund.

24. CROWN CARTING failed to include the required late payment charge of $4,368.80 and $4,307.35 (respectively) with its untimely second and third installment payments.

25. On or about January 17, 2013, on behalf of the Fund, counsel to the Fund advised counsel to Crown Carting that the Company had once again failed to make timely quarterly withdrawal liability payment, due on October 30, 2012. Crown Carting was further advised that it had sixty (60) days to cure the delinquency.

26. On or about January 17, 2013, Crown Carting remitted the delinquent October 30, 2012 payment.

27. On or about April 17, 2013, counsel to the Fund advised counsel to Crown Carting that the Company had failed to make its January 30, 2013 withdrawal liability payment, and thus, if payment with interest was not paid within sixty (60) days, Crown Carting would be in default of its obligations.

28. On April 30, 2013, counsel to the Fund again advised Crown Carting that it had failed to make its January 30, 2013 and April 30, 2013 payments, and that late charges would be assessed upon receipt of payment.

29. On or about May 17, 2013, counsel to the Fund advised the Company that it had failed to pay its April 30, 2013 withdrawal liability payment, and that if such payment is not received in sixty (60) days, Crown Carting would be in default and all withdrawal liability payments would be accelerated.

30. Counsel further advised that as a result of Crown Carting's delinquent July 30, 2012, October 30, 2012 and January 30, 2012 late payments, $2,253.60 representative of interest and penalties were due and owing to the Fund.

31. On or about April 2, 2014, counsel to the Fund advised Crown Carting that it had failed to make its April 30, 2013, July 30, 2013, October 30, 2013 and January 30, 2014 payments, as well as the previously assessed interest in the amount of $2,253.60. Counsel further advised that Crown Carting must make all payments within thirty (30) days to become current.

32. Crown Carting failed to respond to counsel's April 2, 2014 letter.

33. By way of a letter dated September 22, 2014, counsel to the Fund advised the Company that due to Crown Carting's failure to respond to the April 2, 2014 letter, Teamsters Local 945 Pension Fund would be seeking enforcement of the Company's obligation, including the acceleration of withdrawal liability amounts assessed.

34. On October 22, 2014, Crown Carting issued the April 30, 2013 withdrawal liability payment.

35. On October 28, 2014, Crown Carting made two withdrawal liability payments making the Company current for the 2013 year. The Company, however, failed to pay the assessed interest due

as a result of the delinquent payments.

36. By way of a letter dated November 4, 2014, Crown Carting remitted a withdrawal liability payment, requested lower of its monthly payments and further requested cancellation of the scheduled November 20, 2014 arbitration hearing.

37. On November 21, 2014, counsel to the Fund advised counsel to Crown Carting that the Company was currently delinquent with respect to the 2014 quarterly payments, each in the amount $3,533.50, plus interest and penalties incurred as a result of the lateness, and further advised that the Board of Trustees would be willing to consider Crown Carting's request to reduce payments based upon agreement of other terms and conditions.

38. The Fund did not receive a response to its November 21, 2014 proposal.

39. The Fund received a payment on December 29, 2014 for the payment which was due on April 30, 2014.

40. The Fund received a withdrawal liability payment from Crown Carting on February 23, 2015.

41. On February 26, 2015, counsel to the Fund advised counsel to Crown Carting that the Company was delinquent in its withdrawal liability payments, as well as for outstanding interest owed. Counsel further advised that failure to make these payments within thirty (30) days would result in acceleration of the withdrawal liability due and owing and filing of a Complaint in Federal Court.

42. On April 20, 2015, counsel to the Company requested that the Fund relinquish its claim for payment of $9531.60 to allow the employer some "breathing room" so as to allow them to continue the payment of the principle (sic) owed to the Funds.

43. On or about May 5, 2015, the parties began the process of scheduling a hearing with

Arbitrator Margaret Leibowitz.

44. On June 8, 2015, Crown Carting made a withdrawal liability payment in the amount of $5608.58.

45. On April 15, 2016, counsel to the Fund advised counsel to Crown Carting that the Company was delinquent in its January 20, 2016 payment and that interest would be assessed. This communication further advised that Crown Carting had thirty (30) days to make the payment, otherwise the Pension Fund would file in federal court seeking accelerated amounts due and owing together with interest, liquidated damages and attorneys fees.

46. The Fund received a partial payment in the amount of $1500 from Crown Carting on April 15, 2016.

47. The Fund received the April 30, 2016 payment of $3,522.50 on May 26, 2016.

48. On May 18, 2016, the Fund advised Crown Carting that it had failed to pay its April 30 withdrawal liability payment and that failure to do so within thirty days would result in litigation to collect the entire outstanding amount.

49. On August 30, 2016, the Fund advised Crown Carting that it had failed to pay its July 31, 2016 withdrawal liability payment and that failure to do so within thirty days would result in litigation to collect the entire outstanding amount. Counsel further advised that interest on the late payment would be charged upon receipt of said payment.

50. On September 12, 2016, the Fund received a withdrawal liability installment payment.

51. On May 2, 2017, the Fund advised Crown Carting that it had failed to pay its July 31, 2016 withdrawal liability payment and that failure to do so within thirty days would result in litigation to collect the entire outstanding amount. Counsel further advised that interest on the late payment would be charged upon receipt of said payment.

52. On May 11, 2017, the Fund received a withdrawal liability installment payment for the delinquent 2016 installment.

53. On May 24, 2017, the Fund advised Crown Carting that it had failed to pay its January 2017 and April 2017 withdrawal liability payments and that failure to do so would result in filing of a Complaint in Federal Court.

54. On June 7, 2017, the Fund again advised Crown Carting's counsel that the Company was over two months delinquent on its withdrawal liability payments.

55. On September 6, 2017, for the third time, counsel to the Fund advised counsel to Crown Carting that the Company had failed to pay the April 30, 2017 and July 30, 2017 withdrawal liability payments in the amount of $3,522.50 for each payment. Counsel further advised that if the delinquency was not resolved a lawsuit would be instituted.

56. On September 11, 2017, counsel to Crown Carting acknowledged receipt of the Fund's counsel's email and further advised that he was forwarding such notification to Crown Carting for payment.

## FIRST COUNT-WITHDRAWAL LIABILITY

57. Plaintiffs repeat each and every allegation contained in paragraphs 1 through 18 as if set forth in full herein.

58. By virtue of the parties' CBA, Crown Carting was obligated to participate in and contribute, and did participate and make contributions, to the Pension Fund for all hours bargaining unit employees performed bargaining unit work.

59. On or about September 2010, Crown Carting withdrew from the Pension Fund.

60. The permanent cessation of its obligation to contribute to the Pension Fund constituted a "complete withdrawal" as a contributing employer from the Fund, within the meaning of ERISA,

29 U.S.C. § 1383(a)(1).

61. By completely withdrawing from the Pension Fund, Crown Carting incurred withdrawal liability to the Fund pursuant to ERISA, 29 U.S.C. § 1381.

62. The Pension Fund issued a Notice of Withdrawal on or about August 30, 2010, which required Crown Carting to make quarterly installment payments in the amount of $3,522.50 to the Pension Fund commencing October 30, 2010.

63. Throughout the period in question, Crown Carting has repeatedly been delinquent in remitting timely quarterly installment payments, as well as with remitting interest and penalty payments.

64. On May 24, 2017, the Fund advised Crown Carting that it had failed to pay its January 2017 and April 2017 withdrawal liability payments and that failure to do so would result in filing of a Complaint in Federal Court.

65. On June 7, 2017, the Fund again advised Crown Carting's counsel that the Company was over two months delinquent on its withdrawal liability payments.

66. On September 6, 2017, for the third time, counsel to the Fund advised counsel to Crown Carting that the Company had failed to pay the April 30, 2017 and July 30, 2017 withdrawal liability payments in the amount of $3,522.50 for each payment. Counsel further advised that if the delinquency was not resolved a lawsuit would be instituted.

67. On September 11, 2017, counsel to Crown Carting acknowledged receipt of the Fund's counsel's email and further advised that he was forwarding such notification to Crown Carting for payment.

68. To date, more than sixty days have elapsed and Crown Carting remains delinquent on its Ocotber 30, 2016, January 2017 and October 2017 withdrawal liability payments.

69. As a result of this delinquency, Crown Carting owes $10,567.50 in principal on the delinquent amounts, $1,113.56 in delinquency penalty interest of 15%, and $2,818.00 in liquidated damages of 20% for a total of $14,499.06.

70. To date, the Pension Fund has not received the outstanding delinquent withdrawal liability payments for October 30, 2016, July 2017 and October 2017 from Crown Carting.

71. Pursuant to ERISA, 29 U.S.C. § 1399(c)(5), Crown Carting being in default, the Fund has accelerated Crown Carting withdrawal liability payment.

72. As a result of Crown Carting's default and failure to cure within sixty days of notice thereof, the entire withdrawal liability amount has become accelerated and Crown Carting owes $194,146.56 (representative of 51 remaining payments each in the amount of $3,522.50).

73. At no time relevant to the within matter did Crown Carting request that the Pension Fund conduct a review the withdrawal liability assessment.

74. Crown Carting did not request, within the statutory period provided, arbitration to challenge the Pension Fund's assessment of withdrawal liability or to challenge the amount of withdrawal liability assessed.

**WHEREFORE**, Plaintiff, Board of Trustees of the International Brotherhood of Teamsters, Local 945 Pension Fund demands judgment against Defendants Crown Carting Contractors, Inc. and Chris Boel as follows:

    A.    Ordering the Defendants to pay to Plaintiff, Pension Fund, $194,146.56 for the accelerated withdrawal liability amounts due plus $10,567.50 in principal on the delinquent October 30, 2016, January 30, 2017 and October 30, 2017 amounts, $1,113.56 in delinquency penalty interest of 15%, and $2,818.00 in liquidated damages of 20% on the principal delinquent amount owed; for a total of $195,645.57;

B. Ordering the Defendants to pay post-judgment interest;

C. Ordering the Defendants to pay court costs and attorney's fees incurred in connection with this action; and

D. Granting to Plaintiffs such further relief as the Court deems just and proper.

## SECOND COUNT- BREACH OF FIDUCIARY DUTY

32. Plaintiffs repeat each and every allegation contained in paragraphs 1 through 29 as if set forth in full herein.

33. By virtue of the CBA described above, Crown Carting was a contributing employer obligated to make payment of monies/contributions on behalf of its employees to the Pension Fund.

34. Contributions, once earned by an employee, are due to the Pension Fund, and are recognized as a Fund asset of the Pension Fund.

35. Withdrawal liability obligations of an employer, similar to contribution obligations, are a fund asset of the Pension Fund.

36. Since the monies due by Crown Carting to the Pension Fund are a Fund asset, the Company Representative(s) have a fiduciary duty to the Fund and the plan participants to timely remit and turnover such Fund assets to the Fund.

37. At all times relevant hereto, Individual Defendant Chris Boel was the Company Representative.

38. At all times relevant hereto, Individual Defendant Chris Boel was in possession or constructive possession of the corporate monies which constituted Fund assets.

39. At all times relevant hereto, Individual Defendant Chris Boel failed to timely remit monies under his custody and control which were Pension Fund assets to the Pension Fund, and utilized such monies for other purposes.

40. As a result of this wrongful action, Individual Defendant Chris Boel breached his fiduciary duty owed to the Pension Fund.

**WHEREFORE**, Plaintiff, Board of Trustees of the International Brotherhood of Teamsters, Local 945 Pension Fund demands judgment against Defendants Crown Carting Contractors, Inc. and Chris Boel as follows:

B. Ordering the Defendants to pay to Plaintiff, Pension Fund, $194,146.56 for the accelerated withdrawal liability amounts due plus $10,567.50 in principal on the delinquent October 30, 2016, January 30, 2017 and October 30, 2017 amounts, $1,113.56 in delinquency penalty interest of 15%, and $2,818.00 in liquidated damages of 20% on the principal delinquent amount owed; for a total of $195,645.57;

B. Ordering the Defendants to pay post-judgment interest;

C. Ordering the Defendants to pay court costs and attorney's fees incurred in connection with this action; and

D. Granting to Plaintiffs such further relief as the Court deems just and proper.

Date: 11/30/2017

_____
BRADY M. CONNAUGHTON

COHEN, LEDER, MONTALBANO
& CONNAUGHTON, L.L.C.
669 River Drive, Suite 125
Elmwood Park, New Jersey 07407
908-298-8800
*Attorneys for Plaintiff*